UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                  Plaintiff,<br><br>v.<br><br>JESÚS GONZALEZ,<br><br>                                  Defendant. | Case No.: 15-cr-1247-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE WITHOUT PREJUDICE**<br><br>**[ECF No. 54]** |

Defendant Jesús Gonzalez has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c).  ECF No. 54.  The Government opposes.  ECF No. 62 ("Opp.").  For the reasons that follow, Gonzalez's motion is DENIED without prejudice.

**I.   BACKGROUND**

Gonzalez was convicted by guilty plea of one count of Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. §§ 841(A)(1).  ECF Nos. 25, 44.  Gonzalez was sentenced to a term of imprisonment of 10 years, followed by 5 years of supervised release.  ECF No. 459.  At the time this motion was filed, Gonzalez was serving his sentence at the Federal Correctional Institution Terminal Island ("FCI Terminal Island").  After this motion was fully briefed, the Bureau of Prisons ("BOP") exercised its authority to transfer Gonzalez to home confinement.  ECF No. 68 at 2.

1

Gonzalez now is confined at his family's home with his brother and aunt. *Id.* at 7. Gonzalez served about 64 months, or over 50 percent of his sentence, at the time of his initial motion. ECF No. 54 at 7.

Gonzalez is 47 years old and has suffered from hypertension for at least fifteen years. ECF No. 58, Ex. E; ECF No. 36 ("Presentence Investigation Report" or "PSR") at 2, 14. He takes medication for the condition. ECF No. 58, Ex. E. Gonzalez is 5 foot 6 inches tall and as of June 16, 2020, weighed 222 pounds, making him obese with a body mass index ("BMI") of 35.8. *Id.* In December 2017, a medical provider ordered Gonzalez take a "treadmill nuclear stress test" due to his hypertension and occasional chest pain, which Gonzalez has not yet received. ECF No. 58, Ex. E. Gonzalez also had an abnormal electrocardiogram reading, or EKG in 2019. *Id.* He has hyperlipidemia and suffered a recent knee injury that aggravated his existing chronic pain. *Id.*; PSR at 14.

## II. DISCUSSION

Gonzalez now moves for reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses

>for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>. . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Gonzalez has satisfied the administrative exhaustion requirement, and second, whether Gonzalez has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court recently explained:

>The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL

806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  On May 1, 2020, this Court denied Gonzalez's first motion for compassionate release without prejudice on the grounds that Gonzalez had not met the exhaustion requirement.  ECF No. 52.  On June 11, 2020, over three months before filing the instant motion, Gonzalez submitted a request for compassionate release to the Warden, which was denied.  ECF No. 54-1, Ex. A.  The Government does not dispute that Gonzalez has met the exhaustion requirement.  Accordingly, the Court finds that it can consider the exhaustion requirement met.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or

some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Although Gonzalez is no longer confined at FCI Terminal Island, Gonzalez argues that the authority BOP retains to transfer him back to FCI Terminal Island renders him at continued risk of harm. ECF No. 68 at 3. Gonzalez argues that his obesity, hypertension, high cholesterol, and potential additional cardiovascular issues, as well as his age and ethnicity, put him at high risk of severe illness as a result of COVID-19 should he be returned to FCI Terminal Island. *Id.*; ECF No. 54 at 9. Gonzalez also argues that his untreated knee injury impaired his ability to provide self-care while imprisoned at FCI Terminal Island. ECF No. 54 at 9. The Government argues that Gonzalez's medical conditions do not interfere with his ability to provide self-care while incarcerated, and that although Gonzalez's obesity and hypertension may put him at increased risk for severe illness due to COVID-19 according to the Centers for Disease Control and Prevention ("CDC"), these conditions are not so extraordinary as to justify a sentencing reduction. Opp. at 19–22. The Government further contends that, even assuming Gonzalez's circumstances constituted "extraordinary and compelling reasons" to justify release while he was confined at FCI Terminal Island, those circumstances no longer exist because he has been transferred to home confinement and the prospect of his return to FCI Terminal Island is speculative. ECF No. 69.

The Court finds Gonzalez's recent transfer to home confinement by the BOP to be dispositive in this case. Gonzalez's motion is predicated on the risk that the conditions of confinement in BOP facilities pose to individuals with risk factors to COVID-19. Although Gonzalez presents risk factors for serious illness from COVID-19, *see People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention,

5

1  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-
2  risk.html, and he would likely be at high risk of contracting the virus in a congregate
3  setting like FCI Terminal Island, the increased risk of serious illness caused by his
4  sentence has now been significantly ameliorated by his transfer to home confinement.
5  The Court acknowledges that because the BOP indicated it retains authority to return him
6  to FCI Terminal Island, his sentence does continue to place Gonzalez at some level of
7  risk of developing serious illness at some point in the future.  ECF No. 68 at 2.  However,
8  the possibility that Gonzalez will be returned to FCI Terminal Island while the pandemic
9  continues serves as a far weaker basis for finding "extraordinary and compelling reasons"
10 justifying his release than the circumstances that existed at the time of his initial motion,
11 when he faced an imminent threat of contracting the virus.

12       Were the Court to grant Gonzalez's motion and impose home confinement as a
13 condition of supervised release, it would for practical purposes leave Gonzalez in nearly
14 the same condition and merely shift responsibility for his supervision from the BOP to
15 the U.S. Probation Office. Without a showing that there is a risk BOP would actually use
16 its authority to transfer Gonzalez back to FCI Terminal Island while the pandemic
17 continues for reasons unrelated to his compliance with home confinement requirements,
18 the Court finds that ordering a reduction of Gonzalez's sentence based upon a potential
19 future return to FCI Terminal Island would be premature.  Accordingly, the Court finds
20 that Gonzalez has not presented extraordinary and compelling reasons justifying
21 reduction of his sentence at this time.
22 \ \ \
23 \ \ \
24 \ \ \
25 \ \ \
26 \ \ \
27 \ \ \

### III.    CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **DENIED** without prejudice.  Defendant may file another motion should circumstances change.

**IT IS SO ORDERED.**

Dated: October 29, 2020

Hon. Gonzalo P. Curiel
United States District Judge